**Peder B. SLETTELAND, Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Respondent.**

**No. 90–1189.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 8, 1991.

Decided Jan. 29, 1991.

Rehearing Denied March 28, 1991.

---

Mary E. Curtin, Minneapolis, Minn., for petitioner.

John P. Parker, Atty., Federal Deposit Ins. Corp., with whom Ann S. Duross, Asst. Gen. Counsel, and Colleen B. Bombardier, Sr. Counsel, Washington, D.C., were on the joint brief, for respondent.

Before RUTH BADER GINSBURG, SILBERMAN and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Peder Sletteland ("Petitioner") appeals from a decision of the Federal Deposit Insurance Corporation ("FDIC") disapproving his acquisition of a controlling block of stock in the FDIC-insured Pigeon Falls State Bank ("Bank") in Pigeon Falls, Wisconsin. Petitioner seeks to acquire control by means of a voting trust established by his father, the principal shareholder in the Bank, who is himself subject to an FDIC Order banning him from participation in Bank affairs. Our review of the record satisfies us that the FDIC did not abuse its discretion in determining that, at the time of the proposed acquisition, Petitioner was not qualified to act as controlling shareholder of the Bank. We do not reach the propriety of the FDIC's additional determination that the voting trust used to transfer control from father to son was a "bogus" device intended to circumvent the prohibitions in force against the father.

I.

The Sletteland family has controlled the Pigeon Falls State Bank since its inception in the 1920's. In the spring of 1988, George B. Sletteland, principal owner of the Bank and then-Chairman of its Board, became subject to an FDIC Order of Removal and Prohibition ("Removal Order") forbidding him from further involvement in the Bank, effective June 1, 1988. Under 12 U.S.C. § 1818(j), one of the consequences of the Removal Order is to prohibit George Sletteland, under threat of criminal penalties, from voting for a director of the Bank. At the time these proceedings began, section 1818(j) read:

*Penalties.* Any director or officer, or former director or officer of an insured bank, or any other person, against whom there is outstanding and effective [an order of Removal and Prohibition] and who (i) participates in any manner in the conduct of the bank involved, or directly or indirectly solicits or procures, or transfers or attempts to transfer, or votes or attempts to vote, any proxies, consents, or authorizations in respect of any voting

rights in such bank, or (ii) without the prior written approval of the appropriate Federal banking agency, votes for a director, serves or acts as a director, officer, or employee of any bank, shall upon conviction be fined not more than $5,000 or imprisoned for not more than one year, or both.

*See* 12 U.S.C. § 1818(j) (1988) (amended 1989).[1]

The day before the Removal Order took effect, George Sletteland executed a Voting Trust Agreement ("Agreement") for his shares in the Bank and designated Petitioner, the oldest of his four sons, as trustee. Petitioner had only recently become involved in the affairs of the Bank: he had been nominated by his father and elected to the Board of Directors five months earlier, and, again upon his father's nomination, he had just been elected Chairman of the Board. At the time, Petitioner was twenty-six years old.

The Agreement executed by George Sletteland gives Petitioner total discretion with respect to voting the stock. It is irrevocable for five years and may be renewed for a total period not to exceed twenty-four years. The Agreement also includes the voting rights of 11 shares owned by one of Petitioner's brothers, G. Perry Sletteland; in total, it gives Petitioner control of 412 shares out of 1000 shares outstanding, or 41.2%.

In November 1988, as required by the Change in Bank Control Act, 12 U.S.C. § 1817(j) (1988) (amended 1989) ("CBCA" or "the Act"),[2] Petitioner notified the FDIC that he had acquired the voting rights of his father's stock. In March 1989, the FDIC issued a notice disapproving the acquisition. *See* Notice of Disapproval of Acquisition of Control, FDIC–89–40j, at 2–3

(March 10, 1989). Petitioner requested an administrative proceeding; after a three-day hearing, an Administrative Law Judge ("ALJ") issued a Recommended Decision denying the application. The ALJ concluded that Petitioner lacked the competence and experience that would suffice under 12 U.S.C. § 1817(j)(7)(D) to warrant approval of the change in control. The ALJ determined as well that George Sletteland would be able to exert his influence over Petitioner and effectively vote for the Bank's directors in violation of 12 U.S.C. § 1818(j)(ii). *See* Recommended Decision, *In re Pigeon Falls State Bank*, FDIC–89–40j, at 14, 28 (ALJ Nov. 30, 1989) [hereinafter *ALJ Dec.*]. The FDIC Board adopted the ALJ's recommended decision with minor modifications. *See* Decision & Order, *In re Peder B. Sletteland*, FDIC–89–40j, at 7 n. 5 (March 27, 1990) [hereinafter *Bd.Dec.*]. This appeal followed.

## II.

Subsection (7)(D) of the CBCA provides that a federal banking agency may disapprove a proposed acquisition of control if "the competence, experience, or integrity of any acquiring person or of any of the proposed management personnel indicates that it would not be in the interest of the depositors of the bank, or in the interest of the public to permit such person to control the bank." 12 U.S.C. § 1817(j)(7)(D). We hold that it was not arbitrary or capricious for the FDIC to make an assessment under subsection (7)(D) that, at the time the father-son Agreement was signed, Petitioner was not yet qualified to act as controlling shareholder of the Bank. *See* 12 U.S.C. § 1817(j)(5) (stating that a reviewing court shall set aside decision of federal banking agency under CBCA if it is arbitrary or capricious).

---

1. The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") amended the section so that specific prohibited activities are outlined in 12 U.S.C. § 1818(e)(6); as revised, section 1818(j) currently imposes a criminal penalty on any removed director or officer who, without prior approval, "knowingly participates, directly or indirectly, in any manner (including by engaging in any activity specifically prohibited in such order or in subsection (e)(6) ...) in the conduct of the affairs of any insured depository institution...." 12 U.S.C. § 1818(j).

2. The CBCA defines control of a bank as "the power, directly or indirectly, to direct the management or policies of an insured bank or to vote 25 per centum or more of any class of voting securities of an insured bank." 12 U.S.C. § 1817(j)(8)(B) (1988) (amended 1989).

■ The FDIC determined that, because of Petitioner's youth, inexperience, and tenuous financial status, the change in control application should be disapproved. The record shows that at the time Petitioner filed for the change in control, he was only twenty-six years old. He had spent a total of three and a half years at three universities but had not earned a degree. He had not studied finance or banking, and his only banking experience consisted of summer employment as a teenager at another Wisconsin bank in which his father had an interest. More recently, Petitioner had worked for one year at a mens-wear boutique, and then had conducted an interior decorating business operating out of a spare bedroom in his apartment. *See ALJ Dec.* at 24; *Bd. Dec.* at 4–5. The record also shows that Petitioner had overstated to the FDIC the value of his interest in the interior decorating firm, that he had not disclosed a $5,000 loan from one of his father's business ventures, and that his father had been instrumental in arranging and guaranteeing the financing for the purchase of Petitioner's major asset (a partnership interest in a real estate venture). *See ALJ Dec.* at 21–22; *Bd. Dec.* at 5–6.

The CBCA contemplates that financial regulatory agencies have the authority to deny approval of a change in control application when the proposed acquisition shows the potential for future problems. Thus, the Act allows an agency to disapprove an application if "the effect of the proposed acquisition ... *may be* substantially to lessen competition," or if "the financial condition of any acquiring person is such as *might* jeopardize the financial stability of the bank." *See* 12 U.S.C. § 1817(j)(7)(B), (C) (emphasis added). Similarly, the Act instructs that an agency may disapprove a change in control where "the competence, experience, or integrity of any acquiring person ... *indicates* that it *would not* be in the interest of the depositors [or the public]." *See* 12 U.S.C. § 1817(j)(7)(D) (emphasis added). This prescription requires the agency to make a predictive judgment, tied to supporting evidence, about problems that might result from the change in control. In light of Petitioner's youth, lack of

a college degree or other relevant educational background, and limited work experience, we are satisfied in this case that there is substantial evidence "indicat[ing]" that Petitioner's "competence, experience, or integrity" rendered the proposed acquisition not in the best interest of the Bank's depositors or the public.

■ We find unpersuasive Petitioner's argument that the FDIC must apply a lesser standard of "competence" and "experience" to shareholders or voting trustees than it does to bank management. A controlling shareholder can strongly influence, if not dominate, the selection of the Board of Directors, which in turn selects the management. Furthermore, as evidenced by Petitioner's own situation, a controlling shareholder is likely to be a member of the Board of Directors and thus to play a more significant role than someone who, as Petitioner describes it, merely "votes once a year at a shareholders meeting." We defer to the FDIC's reasonable interpretation that subsection (7)(D) authorizes the agency to apply the same standard of "competence, experience, or integrity" to controlling shareholders and management. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

Although we uphold the FDIC's determination that, at the time of the application, Petitioner was not sufficiently qualified to act as controlling shareholder of the Bank, we are not prepared to affirm the FDIC's alternative ground for disapproval. The FDIC Board adopted the ALJ's recommended decision that the change in control was "bogus" and that "George Sletteland would continue to exercise effective control over the vote of his stock" in violation of 12 U.S.C. § 1818(j). *See ALJ Dec.* at 22; *Bd. Dec.* at 3, 13. On this record, we would be hesitant to attribute to the Slettelands an unlawful purpose in establishing the voting trust for George Sletteland's shares in the Bank. Mindful, too, that the statute has since been amended, *see supra* note 1, we do not reach the merits of the FDIC's appli-

cation of section 1818(j) to the facts of this case.

## III.

We conclude that the FDIC did not abuse its discretion in determining that Peder Sletteland's "competence, experience, or integrity" indicated that it would not be in the interest of the Bank's depositors or the public to approve his acquisition as controlling shareholder. The disapproval of acquisition of control is therefore

*Affirmed.*